DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 649320

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                           )<br>                          Plaintiff,    )<br>                                                           )<br>              v.                                       )<br>                                                           )<br>SHANNON PRINCE ,                     )<br>                                                           )<br>                          Defendant.  )<br>_____) | Case No. 3:05-cr-00117-jws<br><br><br>UNITED STATES SENTENCING<br>MEMORANDUM |

## SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT** . . . . . . . . . . . . . . . . . . . . . . . **137MONTHS**

**SUPERVISED RELEASE** . . . . . . . . . . . . . . . . . . . . . . . . . . **4 YEARS**

**SPECIAL ASSESSMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . **$100.00**

The United States Probation Office ("USPO") has prepared a presentence investigation report in this case. The government does not dispute the factual findings of the USPO.

## I.   BACKGROUND[1]

On October 19, 2005, at approximately 2:35 am, Police Officer Troy Clark was parked in his marked police car in the area of 5th Avenue and Hyder, in Anchorage. Officer Clark observed the defendant driving a 2005 Ford Explorer the wrong way on 5th Avenue, causing Officer Clark to follow. The defendant made a right turn onto Ingra – again going the wrong way down a one way street – cutting the corner by driving over the sidewalk between the street sign and the traffic light. He then turned left onto 6th Avenue, and then right onto Karluk, running a stop sign at 9th Avenue. The defendant, apparently knowing that he was being chased by a marked police vehicle with lights and sirens on, turned eastbound on 9th Avenue, then southbound on Nelchina, reaching speeds up to 70 miles per hour. The defendant then careened his vehicle into a parked car on 11th Avenue, pushing the parked car up onto the sidewalk. As the defendant's vehicle

---

[1] The facts of the case are summarized herein. However, the United States relies upon the findings of fact in the recommendation of the magistrate judge during a motion to suppress, filed at docket 25 (slightly amended at docket 32) and subsequently adopted by this Court at docket 34. The Court has also reviewed the transcript of the hearing at docket 27.

continued to roll westbound on 11th Avenue, the defendant jumped out of the car and started running westbound.  The defendant's vehicle continued rolling until it hit a garage at 1315 11th Avenue.

    Officer Clark got out of his vehicle and chased the defendant as he ran through alleys and private yards, ultimately attempting to scale a six-foot fence.  As the defendant was climbing over the fence, Officer Clark grabbed hold of him and a struggle ensued.  Another officer, Sgt. Spadafora, arrived and grabbed the defendant in an attempt to pull the defendant back over to Officer Clark's side of the fence.  The defendant punched Officer Clark twice in the head, causing Officer Clark to let go of the defendant.  The defendant fell to the other side of the fence and got up in an attempt to continue running.  Sgt. Spadafora climbed the fence and grabbed the defendant again.  They wrestled to the ground, all the while the defendant cursed at the officers while he tried to kick and punch them.  Even after the defendant was subdued and handcuffed, he pushed Officer Clark and kicked another officer who arrived on the scene.   The defendant was then put in leg restraints and put in a patrol car, where he continued to thrash about, kicking the windows of the car.

    Ultimately, officers were able to get the defendant to jail, where he was placed on a gurney.  Officer Clark searched the defendant's pockets, detecting

several hard objects he could not immediately identify. Officer Clark then pulled those items out of the defendants pockets, including 24 grams of crack cocaine, $2,096 in cash, two scales, an ecstasy pill, some marijuana, and a black cell phone charger.

After denial of his motion to suppress, the defendant pled guilty to the one count Indictment, without a plea agreement.

## II.  GUIDELINE APPLICATIONS

### A.  Base Offense Level

The USPO correctly assessed the defendant was the possession of 27 grams of cocaine base. The parties appear to be in agreement that such assessment is proper. Pursuant to U.S.S.G. § 2D1.1(c)(4) provides for a **base offense level of 28**.

### B.  Adjustment for Reckless Endangerment

U.S.S.G. §3C1.2 provides for a two-level enhancement if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The USPO found that this enhancement should be applied, based on the fact that the defendant drove the wrong way on two different streets, drove well in excess of the speed limit, drove on sidewalks, and ultimately jumped out of a moving vehicle to flee. His

reckless conduct continued when he fought with police officers who were attempting to apprehend him.  Indeed, one need look no further than the defendant's own admissions in the PSR to establish that the defendant's conduct was reckless.  See PSR, ¶ 59 (" . . . at the time of his arrest on the instant case . . . he was driving around in an attempt to end his life).  Regardless, the facts established at the suppression hearing have been found sufficient to warrant an enhancement for reckless endangerment.  See United States v. Luna, 21 F.3d 874, 885 (9th Cir. 1994).

In Luna, a defendant in a car, which ran three stop signs; when police tried to pull the vehicle over, it stopped in the middle of the road; a police officer walked toward the car, and then, fearing for his safety, the officer retreated.  After the officer got back into his car, the defendant's car accelerated and the police chased it a short distance, after which the robbers jumped out of the car and ran. As in the case at bar, the car was still running.  The Ninth Circuit found that simply abandoning a running car in a residential area is a gross deviation from ordinary care, and affirmed the district court holding.  Id. at. 885 citing United States v. Chandler, 12 F.3d 1427, 1433 (7th Cir.1994) (travelling between 35 and 50 mph through a residential area, and swerving, constitute reckless endangerment); United

States v. Sykes, 4 F.3d 697, 700 (8th Cir.1993) (failing to pull over and thereby compelling police to force defendant off road constitutes reckless endangerment).

This case presents an even more compelling argument for the application of the reckless endangerment enhancement. Like the defendant in Luna, Prince ran a stop sign and jumped out of the car when it was still running. However, Prince also sped through a residential neighborhood, drove the wrong way down two main thoroughfares, and jumped out of the car and the car continued to move, ultimately running into a building. The police officers chased Prince on foot through alleys and private yards, ultimately subduing him after an intense struggle. This alone may be enough to warrant a reckless endangerment enhancement. See, e.g., United States. v. Reyes- Oseguera, 106 F.3d 1481, 1483-84 (9th Cir. 1997) (fleeing on foot from van across three lanes of traffic on busy street at night recklessly created substantial risk of collisions and injury). Regardless, considering the totality of Prince's actions, the enhancement is appropriate, and his base offense level of 28 should be adjusted upward two levels, to 30.

### C.  Acceptance of Responsibility

Currently, the United States agrees that the defendant qualifies for a three-level reduction for acceptance of responsibility. Accordingly, his adjusted offense

level is 27. Based on his criminal history category of VI, his guideline range is between 130 and 162 months.

### III.   SENTENCING RECOMMENDATION

The United States believes that a sentence within the guideline range is appropriate. Despite being only 27 years old the defendant has amassed an impressive criminal resume that has placed him in the highest criminal history category available. Significantly, the defendant's criminal behavior does not appear to stem from drug abuse, but rather an inability to conform his actions to the law. He also has a dangerous proclivity to handle firearms. PSR, ¶¶ 35, 37, 39. The defendant presents an extreme danger to the community, not to mention himself. He has not been deterred by his contact with the state criminal justice system. Indeed, a mere three years after receiving a five year state jail sentence, the defendant was somehow out of jail and able to commit the instant offense. Because of the defendant's history and current offense, a sentence above the low end of the guideline range appears appropriate. However, because the defendant just recently amassed enough criminal history points to attain category VI, the United States submits that a sentence of 137 months is appropriate, followed by four years of supervised release and a $100 special assessment.

RESPECTFULLY SUBMITTED this  16th day of June, 2006 in Anchorage, Alaska.

> DEBORAH M. SMITH
> Acting United States Attorney
>
> s/ Frank V. Russo
> Assistant U.S. Attorney
> Federal Building & U.S. Courthouse
> 222 West Seventh Avenue, #9, Room 253
> Anchorage, Alaska  99513-7567
> (907) 271-5071
> (907) 271-1500 (fax)
> Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing was sent to the following counsel of record on June 15, 2006, via:

  (X) Electronic case filing notice

John Murtagh, Esq.


Executed at Anchorage, Alaska, on June 15, 2006

s/ Frank V. Russo_____
Office of the U.S. Attorney