RECEIVED

JUL 0 7 2008

Clerk, U.S. District Court
Anchorage, A.K.

1          UNITED STATES DISTRICT COURT
                   DISTRICT OF ALASKA
2
    UNITED STATES OF AMERICA,    )   Case No. 3:05-cr-00117-JWS
3                                )
             Plaintiff,          )   Anchorage, Alaska
4                                )   Thursday, June 22, 2006
        vs.                      )   8:38 a.m.
5                                )
    SHANNON PRINCE,              )   IMPOSITION OF SENTENCE
6                                )
             Defendant.          )
7   _____)

8              PARTIAL TRANSCRIPT OF PROCEEDINGS

9         BEFORE THE HONORABLE JOHN W. SEDWICK
                UNITED STATES DISTRICT JUDGE
10
    APPEARANCES:
11
    For the Plaintiff:      FRANK RUSSO
12                          U.S. Attorney's Office
                            222 West 7th Avenue, #9
13                          Anchorage, Alaska 99513
                            (907) 271-5071
14
    For the Defendant:      JOHN MURTAGH
15                          Law Office of John Murtagh
                            1101 West 7th Avenue
16                          Anchorage, Alaska 99501
                            (907) 274-8664
17
    For Probation:          PATRICIA WONG
18                          U.S. Pretrial Services/Probation Office
                            222 West 7th Avenue, #48
19                          Anchorage, Alaska 99513
                            (907) 271-5494
20
    Court Recorder:         APRIL KARPER
21                          U.S. District Court
                            222 West 7th Avenue, #229
22                          Anchorage, Alaska 99513
                            (907) 677-6102
23
    Transcription Service:  TAMSCRIPTS
24                          P.O. Box 2350
                            Land O Lakes, Florida 34639
25                          (727) 378-4031
    Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1               ANCHORAGE, ALASKA - THURSDAY, JUNE 22, 2006

2

3        (Call to Order of The Court at 8:38 a.m.)

4            THE CLERK: All rise. His Honor the Court, the United

5  States District Court for the District of Alaska is now in

6  session, the Honorable John W. Sedwick presiding. Please be

7  seated.

8            THE COURT: Good morning.

9            MR. RUSSO: Good morning.

10           MR. MURTAGH: Good morning, Your Honor.

11           THE COURT: We're here this morning for proceedings in

12  an Anchorage criminal case that's been given the number

13  3:05-cr-117, United States vs. Shannon Prince. Are the parties

14  prepared to proceed?

15           MR. RUSSO: Yes, Your Honor.

16           MR. MURTAGH: Yes, sir.

17           THE COURT: We're here because Mr. Prince pled guilty

18  without a plea agreement to one count of possession with intent

19  to distribute cocaine base. It's a violation of 21 U.S.C.

20  §841(a)(1) and subject to the penalty provisions of 21 U.S.C.

21  §841(b)(1)(B). A presentence report was prepared. Mr. Prince,

22  did you read the presentence report?

23           THE DEFENDANT: Yes, sir.

24           THE COURT: Did you discuss it with your lawyer?

25           THE DEFENDANT: Yes, sir.

1              THE COURT:   When determining the sentence to be
2    imposed today, I must consider the factors specified in 18
3    U.S.C. §3553(a), so I will need to make findings of facts to be
4    used in the application of 18 U.S.C. §3553(a)(1) requiring
5    consideration of the nature and circumstances of the offense
6    and the history and the characteristics of the defendant, as
7    well as for use in application of 3553(a)(4), which requires
8    consideration of the guidelines published by the United States
9    Sentencing Commission.

10             It appears to me that there are no unresolved
11   objections to the factual statements in the presentence report
12   with the exception that Mr. Prince takes the position that the
13   facts recited in the presentence report do not support the
14   adjustments set out in paragraph 21 for a two-level increase in
15   his advisory guideline offense level for reckless endangerment
16   pursuant to Guideline §3C1.2.  We will address that concern in
17   a moment, but first let me say that I find all of the other
18   statements of fact contained in the presentence report to be
19   supported by a preponderance of reasonably reliable evidence,
20   so I adopt them and they will be the findings of fact which the
21   Court uses in this proceeding.

22             At this time, I would like to hear the lawyers'
23   arguments regarding the reckless endangerment enhancement at
24   paragraph 21.  I know that the matter's been addressed to some
25   extent in the papers, of course.  But Mr. Murtagh, I'll hear

1   from you if you have something further to say this morning.

2          MR. MURTAGH:  Certainly nothing new or unique.  I

3   think that the Court needs to look at, and the Court is looking

4   at, the two different aspects and sort of in reverse

5   chronological order from my sentencing memorandum, the

6   interaction with the officers after the vehicle property

7   damage.

8          THE COURT:  Let me say, I think --

9          MR. MURTAGH:  Okay.

10         THE COURT:  -- that's the closer question.

11         MR. MURTAGH:  Mm hmm (affirmative).

12         THE COURT:  I think it's a bit of a stretch --

13   although the driving was clearly reckless, there don't appear

14   to have been any other people around.

15         MR. MURTAGH:  Right.

16         THE COURT:  But -- so I would suggest that you focus

17   on the -- the altercation, because I think that's pretty

18   serious.

19         MR. MURTAGH:  It is certainly serious from a public

20   point of view.  The facts as set forth in the transcript and at

21   the evidentiary hearing demonstrate that after a foot chase,

22   Mr. Prince certainly believed that by clearing a maybe

23   five-foot or four-and-a-half-foot fence, he could place a

24   physical barrier between himself and the officer who had gotten

25   out of his squad car and was pursuing him.

1           When the officer initiated physical contact with Mr.
2    Prince, Mr. Prince was in the process, that is, partially over
3    that fence.  The result would be the leg twitching and pulling
4    away type of things that the first officer on the scene
5    described.

6           A second officer had parked his vehicle, was coming on
7    the scene, and basically told the first officer, 'Well, try to
8    hold on to him, but I'm on the other side.'  And -- and the
9    facts demonstrate that the second officer got on the other side
10   of the fence and Mr. Prince, as I recall, came over that fence,
11   whether released in a timely coordinated manner by the first
12   officer or just plain released, landed on top of the officer,
13   and there ended up being a form of struggle.

14          At one point in time, an officer was on top of Mr.
15   Prince as well, with the -- with the chest contusions.

16          THE COURT:  My understanding is that Mr. Prince landed
17   some blows to the head with his fists and then he also kicked
18   the bodies of these officers.

19          MR. MURTAGH:  That is what the testimony is, and it
20   was reflected in state charges of assault, misdemeanor assault.
21   So again, if we carry that -- there is no doubt.  In other
22   words, would a person look at this and say, 'Why, this is
23   almost like a fistfight, someone swinging their hands,
24   impacting the body, kicking at someone.'  I think that would be
25   a fair characterization.  It'd be my view that that fair

6

1   characterization does not support potential of death or serious

2   physical injury, as we apply the term.

3           I mean, we all know that I can toss a pencil and

4   unfortunately strike someone in the eye and cause terrible

5   injuries.  But as -- as really applied, I think it's a garden

6   variety, at worst, fight, and it really wasn't much of a fight.

7           THE COURT:  Well, it was two on one.  There's no doubt

8   about that.

9           MR. MURTAGH:  Right.

10          THE COURT:  Mr. Prince looks to me to be a fairly

11  impressive person in terms of his physique.

12          MR. MURTAGH:  Right.

13          THE COURT:  He's not a small man.  He looks like a

14  strong man.

15          MR. MURTAGH:  Right.  And I -- I think it's important

16  that what we don't see in this case, we don't see anyone using

17  any specialized fighting training.  We don't hear officers say,

18  as we see virtually every day, 'He went for my eyes, he tried

19  to grab my gun, he tried to grab my baton, he tried to choke

20  me, he tried to get his hand inside my mouth.'  I mean, maybe I

21  see too much violence in my day-to-day practice, but that's

22  kind of what happens much too much.  And this is way below

23  that.

24          THE COURT:  All right.  Thank you, Mr. Murtagh.  Mr.

25  Russo, I don't know whether you want to argue about the -- the

1 | matter of the automobile.  I mean, clearly it was reckless to
2 | jump out of a moving car, and it did run into a garage.  He did
3 | drive the wrong way on some streets, but I don't see any
4 | evidence of there actually being other people at risk, so I'm
5 | inclined to think that's a bit of a stretch to support reckless
6 | endangerment there.  But I'll hear you out, if you want to
7 | argue that.  And of course, as you can see from my earlier
8 | comments, I -- I am kind of focused on the altercation.

9 | MR. RUSSO:  Well, Your Honor, I would ask the Court to
10 | consider the -- the previous driving.  Not so much the getting
11 | out of the car, but the driving before that.  I mean, this is a
12 | man who drove the wrong way down 5th Avenue.  Albeit, I think
13 | it was 2 in the morning, but still, driving the wrong way down
14 | 5th Avenue is certainly a reckless act.

15 | THE COURT:  There's no doubt that it's reckless.
16 | The -- the problem I -- I guess I have with the enhancement
17 | here is whether or not -- there's no evidence of anybody being
18 | endangered.  I mean, if there's nobody on the street, driving
19 | the wrong way is certainly a violation of the Motor Vehicle
20 | laws, but -- and it's reckless to do it because there could be
21 | somebody on the street.  But if there isn't anybody on the
22 | street, it's hard to say they were --

23 | MR. RUSSO:  Well, I think the Court can take notice of
24 | the fact that 5th Avenue's a --

25 | THE COURT:  Well, it's a busy --

1          MR. RUSSO:  -- well-travelled thoroughfare.

2          THE COURT:  It's certain a busy street when I'm on it,

3    but I'm never there at 2 a.m.

4          MR. RUSSO:  Of course.  But in any event, I think when

5    you compare this case to the facts of the Luna case, which I

6    cited in my brief, I think the -- the conduct here is much more

7    serious.  You certainly have the -- the wrong way down 5th

8    Avenue, then the wrong way down Karluk Avenue, blowing a stop

9    sign.  I know Mr. Murtagh pointed out that the officer was

10   unclear about him blowing a stop sign.  But it really wasn't he

11   was unclear about him blowing a stop sign, what he was unclear

12   about is to which block he blew the stop sign at.  And here, it

13   was -- it was 9th Avenue, not 8th Avenue, as the officer

14   originally stated.

15         But then you have him accelerating at speeds of -- of

16   70 miles per hour, and then jumping out of the vehicle while

17   it's still moving, which is very similar to the facts in -- in

18   Luna.  But then, of course, when he gets out, that's -- that's

19   when certainly his acts become more reckless and -- and

20   certainly endanger the lives of the police officers.  Of

21   course, they're climbing after him.  He's scaling fences.  They

22   have firearms on them.

23         I think when you -- when you look at the totality of

24   his actions from the driving, all the way to the fleeing at the

25   end and the fight, you know, with two police officers who have

1  firearms, I think that would create a substantial risk of
2  serious bodily injury, if not death.  Certainly one, as I
3  pointed out in my sentencing memo, one would not look further
4  than his own admissions that, you know, Mr. Prince was driving
5  around that day in the hopes of killing himself.  I think just
6  from that alone you could certainly infer that, you know, his
7  whole actions created a substantial risk of physical injury,
8  not only to others but to himself.  So I think when you look at
9  all of his actions, I think the -- the enhancement's warranted.

10        THE COURT:  All right.  Thank you, Mr. Russo.  Well,
11  I -- I think that the facts do support the increase for
12  reckless endangerment with respect to the advisory guideline
13  offense level.  Among the relevant facts are that -- that are
14  detailed in the testimony that was given and -- and reflected
15  also in the presentence report, are that Mr. Prince, I think,
16  did expose the arresting officers, as well as himself, to
17  serious bodily injury in the altercation that arose when he was
18  arrested.

19        He -- he punched one officer in the head and he was
20  kicking at the other officers.  Perhaps I've not been exposed
21  to as much violence as Mr. Murtagh, but in my mind there's no
22  doubt that blows to the head and kicks to the body of a human
23  being do create a substantial risk of serious bodily injury.
24  The fact that the officers were armed also means that when
25  struck with such -- by a powerful adversary, there's a strong

1    temptation to pull out that weapon.  Once the weapon comes out,
2    everybody's at risk.

3         I would note that guideline application note 3 makes
4    clear that this adjustment applies to conduct which occurs in
5    the course of resisting arrest.  All right.  So based on the
6    presentence report and my findings of fact, I -- I do adopt
7    paragraph 21, as well as all of the others in the presentence
8    report.  So we have an advisory guideline range, which is a
9    level 27, with a criminal history category of VI.  That would
10   call for a sentence from 130 to 162 months of incarceration,
11   and a fine of from $12,500 to $125,000.

12        Before I hear from counsel and from Mr. Prince, I do
13   need to inquire if there's any victim of this crime who wishes
14   to speak before sentence is imposed.  I see none.  Are you
15   aware of any, Mr. Russo?

16        MR. RUSSO:  No, Your Honor.

17        THE COURT:  All right.  Then I think at this time,
18   it's appropriate to hear from counsel regarding an appropriate
19   sentence under 18 U.S.C. §3553(a), together with comments on
20   the defendant's request that the sentence in this case run
21   concurrently with the five years he is serving for the March 3,
22   2003 state drug charges.  Mr. Murtagh.

23        MR. MURTAGH:  Thank you, Your Honor.  I'd like to
24   start my remarks by talking about two things that -- that have
25   happened in the past 30 years.  One is what has been so far my

1   most embarrassing moment in court.  About 30 years ago, I was

2   appearing in front of Judge Mark Rowland in the case of State

3   vs. Mitch Pistro.  Mr. Pistro had a number of criminal

4   convictions.  He had just been convicted after a jury trial of

5   a felony.  He was facing, I believe it was probably a

6   presumptive sentence of about six year.

7        And at that time, when computers weren't so -- so

8   skillful, and when record keeping wasn't that accurate, Judge

9   Rowland asked me, 'Well, what -- what date does his sentence

10  start?  We know he was arrested down in Homer over the weekend,

11  you know, way back, way back.  What day does his sentence

12  start?'  And I said, 'Well, I'm -- I'm not real sure, Judge.

13  Why don't we pick Sunday?'  And he turned as red as Judge

14  Rowland ever turned red, and explained to me vividly that I was

15  just throwing away one day, maybe two days of my client's

16  freedom.

17        I think about that before I go to every sentencing.

18  I'm sure the state Department of Corrections would have figured

19  out if Mitch was arrested on a Sunday, a Saturday, or a Friday.

20  Maybe as a bad selfish person, I thought, well, one day

21  slippage in a seven-year sentence, what's the difference.  But

22  that really brought to bear to me that this is all really

23  important.  Each day is really important, and I try to remember

24  that before -- before I conduct every sentence.

25        And now in federal court, we again have the ability

12

1 to -- to look at all of these factors and try to weigh under

2 the principle of parsimony.  What about that day?  What about

3 that week?  What about that month?  What about that decade?

4          The other thing that I'm familiar with is a case --

5 when we try to find out what these principles are to set up

6 what a sentence should be -- there was a sexual assault in a

7 village around Bethel way, and the lawyers and the judge went

8 up to gather some information from -- some -- some community

9 input.  And we were looking at a pre- -- I don't think it was

10 my case -- it was a presumptive sentence, you know, people are

11 just saying it's going to be very, very serious.  And the

12 elders, after -- after discussing the case, said, 'Well, you

13 know what we should really do?  What the best sentence is, is

14 he should be in jail for one entire fishing season because it's

15 the most shameful thing in our community to not provide for

16 your family.'  And of course, that isn't what the sentence was

17 because the Alaska legislature had picked out some other

18 sentence.

19          But I look at those two examples and I remember that

20 this is not precise, this is not accurate, this is not science.

21 And we all know that in the process of establishing the United

22 States Sentencing Guidelines, it was -- I'm sure there was

23 input from social scientists.  But when we look and we say,

24 'Well, the specific sentence for this young man based on this

25 stage of his life would be, prior to Booker and Fanfan, like

1   137 months.'  Well, what kind of a number is that?  That's a

2   number of compromise.  That's a number of politics.

3   Fortunately, that's not where we are today.

4          I hope my memorandum tracks through what I think is --

5   is not only a helpful but a correct way to look at this case.

6   Congress has established the principle of parsimony.  Your

7   Honor has to -- Your Honor has to impose the necessary

8   sentence, but no more.  As I set forth in my argument, some of

9   the things that we would be thinking about today, restitution,

10  or is there some evidence in this record that Mr. Prince needs

11  to be in prison more than five years in order to complete a

12  correctional program, an educational program, what have you.

13  Those do not -- those are negative answers to the question, is

14  it necessary.

15         We talk about deterrence of others, and I've really

16  broken that up into two communities.  A thinking community.

17  Well, let's see, what happened?  Well, this guy had some drugs

18  on him, he never got his life right, he ran from the police, he

19  got in a big fight.  Well, what happened to him?  He had to go

20  to a federal prison for five years.  Oh, that's that country

21  club stuff where you get out right away?  No.  They don't have

22  parole.  They've got 55 days good time.  And he went to a

23  federal prison for almost five years.

24         Well, the thinking community is certainly going to be

25  impacted on that.  The non-thinking community, and I -- I think

1   of -- of that as the DWI fatality folks, of whom I've

2   represented very many.  Either they don't know what happens to

3   someone like Mr. Prince -- because they're familiar with the

4   folks in state court.  'What happened?'  'Oh, he got probation

5   and had to go to Point McKenzie.'  Or they just say, well, it's

6   not going to happen to me, which is the standard story from

7   folks with the DWI fatalities.  They know what happens to those

8   other guys, but it's not going to happen to them.

9          So I think general deterrence, five years in a federal

10  prison is, in fact, a fair and appropriate, and a just

11  statement, one that the thinking community will process.

12         THE COURT:  Well, let me ask you this, I mean,

13  analyzed the way you do, the deterrence of others sounds like

14  it's impossible to apply.  Because the thinking community would

15  say, 'I don't want to go to jail for even one day.'

16         MR. MURTAGH:  Right.  But --

17         THE COURT:  And you were saying but most of the

18  people, they either don't know or it won't happen to them.  So

19  there really isn't any way to deter others.  I mean, I think

20  that's what I hear you say.

21         MR. MURTAGH:  I'm pretty close to that.  That's

22  exactly what Judge Beistline told us in the sentencings of

23  U.S.A. vs. Lusk and Mr. O'Connor.  That was the

24  drug-consumption death case.  And we were talking about, well,

25  how do we get the message out to folks.  And Judge Beistline

1  pointed out that as a state judge, he had gone to schools and
2  gone to different places to try to educate young people on not
3  using drugs and the consequences.  And -- and Judge Beistline's
4  conclusion was, well, it doesn't work.  Folks aren't going to
5  get the message, for the reasons that we discussed.

6          THE COURT:  Well, there's really no way to know.  We
7  made a --

8          MR. MURTAGH:  Right.

9          THE COURT:  -- movie in this court, and we had that
10  movie shown by the school district.  I don't know.  I guess I
11  felt that if -- if just one kid --

12          MR. MURTAGH:  Mm hmm (affirmative).

13          THE COURT:  -- just one kid didn't start to deal in
14  drugs as a result of seeing that movie, the movie was a
15  success.  But, you know, we'll never know if one kid --

16          MR. MURTAGH:  Right.

17          THE COURT:  -- or two kids, or no kids --

18          MR. MURTAGH:  Right.

19          THE COURT:  -- were deterred.

20          MR. MURTAGH:  And that's why I think -- and -- and
21  that's why I even italicized those two lines in my pleading --
22  even if the answer to some questions is yes, that doesn't tell
23  you how much.  I mean, clearly -- I -- I mean, the principle of
24  general deterrence means -- and I describe this to clients --
25  is, because you broke the law --

1          THE COURT:  Why don't we talk about specific

2    deterrence here?  Mr. -- Mr. Prince has a pretty fearsome

3    record, really.

4          MR. MURTAGH:  He does, indeed.  He does, indeed.  And

5    as I mentioned in there, that -- that's his choice, that's his

6    responsibility.  I don't want to drop that off as -- as the

7    lead sentences in the paragraph.  But he has never served a

8    significant sentence because in the state court system, if it's

9    a misdemeanor, you line up 40 folks in court, the judge gives a

10   coral reading of what your important constitutional rights

11   were, and 45 minutes later --

12         THE COURT:  Maybe you and your colleagues are just too

13   successful in state court.

14         MR. MURTAGH:  Well, I don't -- that's what you say.  I

15   don't know whether we are because we don't know what the long

16   term is.  I mean, I have my -- I have my clients go into court.

17   I don't do this --

18         THE COURT:  We're looking at one long term here.

19         MR. MURTAGH:  Right.  Right.  I mean, I don't -- I

20   don't -- yeah, and that is the consequence.  I mean, in

21   response, my practice, I make my clients go to court.  We have

22   this consent to proceed thing over in state court, so a person

23   can literally, once their check clears, never go to court

24   again.  And that's -- that's like absolutely ridiculous.  Or

25   once they're appointed in a -- in a -- so we -- I agree with

1   that and I think when we parse out the different things -- and

2   that's why I do think the focus is specific deterrence and what

3   we might call a danger to the community.  Those are the two

4   criteria that I discussed last in my memorandum.

5         And that's why I set forth sort of the default

6   analysis of how do we know what's going to happen and, as you

7   say, how will we know in the future whether something made an

8   impact or didn't make an impact.  If Mr. Prince got the

9   state -- the government's recommendation, will we ever have any

10  data that kids on the bubble said, 'Gee, I would have risked

11  eight years in federal prison at the drop of a hat.  But by

12  golly, by the time they got to nine, I straightened up, folded

13  bandages for the Red Cross, went to school, and -- and now I'm

14  supporting foster kids overseas.'  I -- I don't think we're

15  going to have any evidence on that.

16        So if we really focus on Mr. Prince, which is really,

17  I think, probably where we have to be in all of these

18  sentencings -- it was important for me to think again what

19  supervised release is, and to distinguish that in my

20  discussions with Mr. Prince from probation in the state system.

21  You know, in state, you get -- and the new -- and hopefully the

22  Court won't see many of these, but I suspect Mr. Russo is

23  seeing them.  They're giving the young people the sweet deals

24  over there in state court all the time.  Almost no matter what

25  you do, within some allowance for hyperbole, you get three

1    years with all the time served, suspended.  And they end up

2    doing their three years on the installment plan, maybe.

3         So the kids just show up on Friday's, en masse, all

4    plead no contest, get out, and then we start the process all

5    over again, because the probation, whether it's a function of

6    resources, whether it's a function of a protest -- we see in

7    this case, Mr. Prince was on probation for a case when the

8    state case that precedes this case took place.  And he's out as

9    a free man, not having served a sentence.  So that isn't much

10   of -- much of a -- much of a message.

11        So deterrence of others, deterrence of self.

12   Deterrence of self is -- is where we are here.  And what I was

13   saying is that we know that with supervised release, he will be

14   supervised, and we know that if he violates, he doesn't have to

15   the violate the law to be put back in jail for whatever portion

16   of the supervised release term, four years, five years.  So

17   there's a much closer hitch on this.

18        So I -- I posited in my memorandum, what happened --

19   what -- what happens if you make a decision a certain way and,

20   in hindsight, that decision was not a perfect decision because

21   none of us make perfect decisions.  On the one hand, he's

22   immediately revoked on supervised release, hopefully for a

23   minor occurrence, so that the public is not at risk, or he does

24   an extra decade in prison.  But let's spin this around and say,

25   well, what if you pick the shortest possible sanction you feel

1  | meets the criteria and you're correct?

2  |        Then if we're looking at these like you talked about,

3  | well, if we deter one child by the -- the video presentation,

4  | that's really something.  Well, what if after five years we've

5  | got Mr. Prince on track?  That's one person, too.  So that's --

6  | that's, I think, where we end up.  I -- I -- I don't think I

7  | can give you an answer on -- on what it is because I think some

8  | criteria --

9  |        THE COURT:  Can you -- can you tell me exactly when

10 | his sentence commenced in state court?

11 |        MR. MURTAGH:  The time and accounting on that is real

12 | shaky.

13 |        THE COURT:  Well, we can -- we can come pretty close

14 | though, can't we?  Wasn't it in February of this year?

15 |        MR. MURTAGH:  In -- I've actually got the log notes of

16 | the sentencing, if that would help.  I should have the log

17 | notes of the sentencing.

18 |        THE COURT:  I think the presentence report at least

19 | suggests, if I remember -- I'm going to check it -- February --

20 |        MR. MURTAGH:  He was sentenced -- he was sentenced

21 | on --

22 |        THE COURT:  February 24?

23 |        MR. MURTAGH:  February 24th, 2005, and promptly did no

24 | time.  That's the dilemma.  At the end of that sentencing,

25 | Judge Card, at 4:12:42 p.m. on the log notes, 'Court allows

1    defendant to remain out pending appeal.  Court needs to have

2    copy of notice of appeal.  Have status hearing.  Just remain on

3    bail pending appeal.  You have to go to probation.'

4         So he was not serving a sentence.  He -- he may have

5    had some time prior to February 24th, that is, in kind of like

6    the pretrial phase.

7         THE COURT:  Yeah.  All right.

8         MR. MURTAGH:  But post trial, post verdict and post

9    sentencing, he was out on bail pending appeal.  And then I

10   think he was first arrested -- this case began as a state case,

11   this very case that we're dealing with today began as a state

12   case, and he was not remanded immediately.  That is the step to

13   get the clock started.  His -- his counsel then thought maybe

14   they could do one-stop shopping and resolve everything.

15        I -- I'm not certain of the date that Mr. Prince was

16   remanded, that is, starting the clock on the state case,

17   because I'm not his counsel in that matter.  We know it was

18   last year though.  Was it in -- in --

19        THE DEFENDANT:  October.

20        MR. MURTAGH:  It was in October.  Mr. Prince recalls

21   it as October of '05 when he was remanded.  So -- and do you --

22   do you know how much time you spent in jail, like pretrial, how

23   much credit it would seem you would have on the state case so

24   far?

25        THE DEFENDANT:  It was like five or six months.

1        MR. MURTAGH:  Five or six months before the trial?

2        THE DEFENDANT:  Yeah.

3        MR. MURTAGH:  Okay.  So that's his best recollection.

4   As Mr. Wong pointed out in the -- in the supplement, the time

5   accounting's kind of difficult.

6        THE COURT:  So we're talking November, December,

7   January, February, March, April, May, June.

8        MR. MURTAGH:  Right.  Right.

9        THE COURT:  Plus five more?

10       MR. MURTAGH:  That --

11       THE COURT:  Roughly a year --

12       MR. MURTAGH:  Right.

13       THE COURT:  -- or 13 months.

14       MR. MURTAGH:  Right.  That, yeah, that -- that seems

15   to be correct.  So that's where we are on that, and -- and --

16   and of course, I started with my request being the most extreme

17   request as possible because, frankly, I don't know how to say

18   to you exactly, well, this criteria says six months more than

19   five years is the right answer, or nine months more than five

20   years is the right answer.  So I'm -- I'm taking the -- the

21   advocate's position and saying that the Court just has to look

22   at the record.

23       THE COURT:  Well, I -- I realize that we don't -- it's

24   sort of ridiculous to try and parse it in a matter of days, but

25   it is important to me to know roughly how much time he's --

1              MR. MURTAGH:  Mm hmm (affirmative).

2              THE COURT:  -- already served --

3              MR. MURTAGH:  Mm hmm (affirmative).

4              THE COURT:  -- and how much time he's got left to

5      serve.

6              MR. MURTAGH:  Right.

7              THE COURT:  So it would appear that he's got roughly

8      four years left, maybe a little less, in the state?

9              MR. MURTAGH:  Right.  That would be -- and of course,

10     the state has the good time calculations, but calendar --

11             THE COURT:  Right.

12             MR. MURTAGH:  -- time.  He has about four years

13     calendar time.

14             THE COURT:  Which is more generous than in federal.

15             MR. MURTAGH:  Correct.

16             THE COURT:  I understand that.

17             MR. MURTAGH:  Correct.  So he has about four years of

18     calendar time left on that sentence.

19             THE COURT:  All right.  And probably that means a

20     little less than three years of real time.

21             MR. MURTAGH:  That's -- that's how I think it would

22     clock out.

23             THE COURT:  Okay.  All right.  Thank you, Mr. Murtagh.

24     Mr. Russo, I need to hear from you, sir.

25             MR. RUSSO:  Yes, Your Honor.  Well, I certainly don't

23

1  have the experience of Mr. Murtagh in the criminal justice
2  system as to the goals of punishment, and I certainly don't
3  have as much experience as -- as Your Honor and Mr. Murtagh in
4  the state of Alaska.  I've been here for about three and a half
5  years.  But consistently during that time, one of the constant
6  arguments that comes up is state sentences and how they should
7  impact federal sentences.  And when you boil that argument
8  down -- I've boiled it down in my head several times and it
9  seems to rely upon somewhat of a tautology.

10      The argument goes, the state's sentence and the state
11  criminal justice system has been too lenient with my client,
12  and therefore the federal court should be lenient as well.  It
13  just doesn't seem to make any sense to me, especially -- I was
14  a state prosecutor in two separate states, and I look at it
15  from a different perspective.  I don't think the defendant is
16  unlucky for being prosecuted in federal court as opposed to
17  Alaska state court.  I simply think in the past, he is lucky
18  for having been prosecuted in the State of Alaska criminal
19  courts.

20      To me, it's, you know, I'm baffled by the fact that
21  this is a man who had a history of using guns and dealing
22  drugs, had convictions on his record, including -- starting at
23  a juvenile.  I think he was involved in a -- in a homicide.
24  He's convicted in state court by a jury, sentenced to eight
25  years with three years, I guess, suspended, so a sentence of

1    five years.  And somehow, it is seen as appropriate to let the

2    defendant out and let him out on bail pending appeal, despite

3    the fact that there's certainly no need for a showing that the

4    defendant could have prevailed on the appeal.  That's my

5    understanding of state court.

6          And, you know, the predictable happens.  The

7    defendant, who has a history of drug crimes, has a history of

8    violence, does exactly the same thing.  And it inures to his

9    benefit.  It inured to his benefit in this case because when we

10   looked at the defendant's record and we looked at who he was,

11   it was certainly defendant that we considered very strongly

12   filing an 851 notice to enhance his sentence.  And I talked

13   about this with Mr. Murtagh very early on, and Mr. Murtagh

14   pointed out that we can't enhance someone's sentence because

15   his state sentence isn't final because it is somewhere in the

16   state appellate system.  And it has not been final until that

17   last deal comes down and denies his sentence.

18         So, I mean, here is -- is a person who would have been

19   looking at 10 years in prison as a mandatory minimum.  You

20   know, I start from that point.  Then when you look at it, if a

21   concurrent sentence is imposed, that almost says to any

22   defendant, 'Hey, after you're convicted in state could and you

23   get out on bail pending appeal, go commit whatever crimes you

24   want because it's a freebie.  You're not going to get any

25   additional time.  The federal court or the state court will

1   impose a concurrent sentence.'  That seems to be what I know,
2   Mr. Murtagh said his extreme request is, is a five-year
3   sentence that's concurrent.  But by that rationale, it does not
4   oppose any additional time for what he did here.

5          Quite simply, I don't think we should pick up the bill
6   for Mr. Prince's past wrongs.  I don't know how to answer the
7   question about general deterrence and whether the public will
8   be deterred and what certainty we can have if we impose a
9   sentence of 137 months as opposed to 60 months.  I can't answer
10  those questions.  What I can answer is that Mr. Prince has
11  proven himself to be a dangerous man.  He has hurt others in
12  the community.

13         And based on his past, which is really all we have to
14  judge him, he may do so in the future.  And when you look at
15  that, the only certainty I can have is that the public will be
16  protected if Mr. Prince is given a lengthy sentence.  Thank
17  you.

18         THE COURT:  Thank you, Mr. Russo.  Mr. Prince, you
19  have a right to speak before sentence is imposed.  Now is the
20  chance if you wish to speak.

21         THE DEFENDANT:  First of all, I want to start with, I
22  apologize to the State of Alaska for my actions.  But the part
23  about me being a juvenile and being involved with a homicide,
24  yeah, I was 15 when that happened and all the other people I
25  was with was like 19 or 20 years old, and I was at the wrong

1  place at the wrong time.  But apart of that, I testified

2  against them people for what happened that day.

3        And I don't believe that I am a danger to the

4  community because I really ain't never shot nobody or shot at

5  people.  I've been caught around guns, but there never been to

6  a point that they was really my guns, but I still took

7  responsibility of it because that was a case I got caught with.

8        But like I said, first of all, I just want to

9  apologize.  But I'm taking this all as a blessing because two

10  weeks before I got arrested this time, I asked God to find some

11  way to help me get my life together, and I believe in my heart

12  this was the only way he could set me down and get me to start

13  thinking right, get my life on track, and mature more, and

14  making better decisions in my life.

15        So this whole time I've been sitting in jail, I've

16  been, you know, just trying to get my thoughts together, get my

17  life together, and -- and straighten up.  And that's basically

18  all I can really say on my behalf.  But I just know that every

19  day I'm taking progress, I'm changing my life.  So I know in my

20  heart that when I get out, this is not what I want I to do

21  again for the rest of my life.

22        THE COURT:  All right.  Thank you, Mr. Prince.  Well,

23  let me first address the question of whether the sentence

24  imposed in this court should be concurrent or consecutive.  The

25  statute which appears to me to be most relevant is 18 U.S.C.

1   §3584(a).  It says that:

2               "Where a sentence is being imposed on a different

3               occasion than the imposition of the first sentence,

4               the time imposed will be consecutive unless the court

5               orders that it may be concurrent."

6   Then in the next paragraph, that's §3584(b):

7               "Congress directs the court to consider the 3553(a)

8               factors in deciding whether to make a sentence

9               concurrent or consecutive."

10              One of those factors which the court must consider

11  then with respect to the concurrent versus consecutive issue is

12  the relevant guideline published by the United States

13  Sentencing Commission.  Whereas here, the court is considering

14  imposition of a sentence on a defendant who is subject to an

15  undischarged term of imprisonment for another crime for which

16  he had not been sentenced prior to the commission of the

17  instant offense, and where the earlier crime is not considered

18  relevant conduct to the instant offense, then the specific

19  guideline and point is 5G1.3C, which indicates that:

20              "The court should impose a concurrent, partially

21              concurrent, or consecutive sentence 'to achieve a

22              reasonable punishment for the instant offense.'"

23              From all of this, I conclude that the court should

24  take the state sentence into account when determining the total

25  amount of time that defendant will be required to serve.

1  There's several ways to do this.  Let me give you some examples
2  of how the court could do it.
3          Suppose, for example, the court were to determine that
4  a defendant named Jones should be incarcerated for, say, 20
5  years.  If Jones still had 20 years to serve on a state
6  sentence, then this court would sentence him to 20 years
7  concurrent to the state sentence.  On the other hand, if Jones
8  had only five years to serve on the state sentence, then this
9  court could sentence Jones to either a 15-year consecutive
10 sentence, or, alternatively, to a 20-year sentence, the first
11 five years of which would be concurrent to the state sentence.
12          In my view, it would always be simpler and less likely
13 to create confusion if this court were to choose the 15-year
14 alternative in the example I gave.  And indeed, that's the
15 approach I'm going to employ in Mr. Prince's case.
16          So looking at the 3553(a) fact- -- 3553 factors, the
17 first one is (a), which requires me to consider the nature and
18 circumstances of the offense, and the history and
19 characteristics of the defendant.  The nature and circumstances
20 of the offense here show an individual who literally would stop
21 at almost nothing, including assaulting police officers and
22 taking great personal risks, to avoid being captured and
23 punished for his drug dealing.
24          The only thing that mitigates the matter is that the
25 amount of drugs involved was, by today's standards, relatively

1  modest, which suggests that Mr. Prince is a street-level

2  dealer, not a major source of illegal drugs.

3         The history and characteristics of the defendant show

4  that he is a confirmed recidivist who has no respect for the

5  law and who has committed very serious crimes of violence.  I

6  think this factor would support a very substantial sentence.

7  Bearing in mind that the -- that the maximum possible here is

8  40 years in prison, I think a sentence in the range of 12 to 13

9  years is certainly supported by -- by consideration of this

10 factor.

11        Now the next factor, (a)(2), itself contains four

12 distinct subcategories.  Factor (a) requires the court to

13 consider the need for a sentence which reflects the seriousness

14 of the offense, promotes respect for the law, and provides just

15 punishment.  Again, with respect to these factors, I think that

16 a sentence in the 12 to 13-year range would be appropriate.

17        Factor (b) requires a sentence sufficient to deter

18 others from such conduct.  Counsel are right.  It's very

19 difficult to know how much is enough to deter other people.  I

20 would -- I would tend to think that a sentence of five years is

21 adequate to deter others.  Anybody who realizes that engaging

22 in drug dealing is going to put them behind bars for five

23 years, if he falls in a thinking man's category, would

24 certainly be deterred.  With respect to the it'll-never-happen-

25 to-me group of people, I don't think it matters how many years

1    I were to impose.

2        Factor (c) requires a sentence that will protect the
3    public from further crimes of the defendant.  I think this
4    factor clearly -- clearly supports a sentence, a substantial
5    sentence, 12, 13 years easily.

6        Factor (d) requires a sentence which will provide the
7    defendant with needed educational and vocational opportunities,
8    medical care and correctional treatment in the most effective
9    manner.  The Bureau of Prisons programs are supposed to be
10   available -- would be available to Mr. Prince during the term
11   of his incarceration.  And I am not aware of any specific
12   medical care or special treatment that might -- such as you
13   might have with the very elderly or very sickly defendant that
14   bear on the sentencing discretion here.

15       §3553(a)(3) requires the court to consider the types
16   of sentences available.  For the felony conviction here, the
17   only sentence available is incarceration.  A fine would be
18   possible as well, if Mr. Prince had the ability to pay it,
19   which he doesn't.  And of course, supervised release must be
20   considered and -- and must indeed be imposed following any
21   period of incarceration.

22       §§3553(a)(4) and (5) require me to consider the
23   guideline range and guideline policy statements.  Here, those
24   considerations point to a sentence of from 130 to 162 months.

25       §3553(a)(6) directs the court to avoid unwarranted

1  sentencing disparities, something that is generally best

2  accomplished by a sentence within the guideline range.

3          The last consideration, (a)(7), deals with

4  restitution, which has no application here.

5          And then finally, as Mr. Murtagh and his colleagues on

6  the defense side of the bar are wanting to argue, the court is

7  directed by the statute to impose a sentence which is

8  sufficient, but not greater than necessary, to achieve the

9  sentencing goals.

10          Here, in addition to making sure the sentence is not

11  otherwise too harsh, I will take into account the fact that the

12  defendant still has approximately four years to serve on the

13  sentence that has been imposed by the state court, I think in

14  February of this year.

15          Taking all of these considerations into account,

16  including the -- the time that Mr. -- Mr. Prince still has to

17  serve in -- in state court, I conclude that a sentence of 110

18  months, to run consecutively to the remaining time on the state

19  sentence, is the appropriate sentence.  A particular concern

20  here, I think, that this sentence will be sufficient to protect

21  the community from a man whose past, at least, displays conduct

22  of a very dangerous individual.

23          Mr. Prince will be older and, I think, wiser.  And

24  certainly by then, he ought to be really sick of being in

25  prison.  So there's some hope that when he emerges, he will

1   indeed do those things he suggested to me, that he is prepared

2   to do today, which is to turn over a new leaf and become a

3   positive contributing member of the community instead of

4   someone who poses a danger to all of the other members of our

5   community.

6        (Audio Server, Log No. 9:17:15)

7        (This Portion Not Requested)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

1                                    CERTIFICATION

2

3          I certify that the foregoing is a correct transcript from

4    the electronic sound recording of the proceedings in the above-

5    entitled matter.

6

7    _____            6/30/08
            Tammie Heinrich, Transcriber            Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TAMSCRIPTS • (727) 376-4001

**-#-**

**#229** [1] 1:21
**#48** [1] 1:18
**#9** [1] 1:12

**-$-**

**$12,500** [1] 10:11
**$125,000** [1] 10:11

**-'-**

**'** [14] 5:8,24 6:20 11:12,13
12:16 13:1 14:4,5,15
17:14 20:3 25:1 27:22
**'05** [1] 20:21
**'Court** [1] 19:25
**'Gee** [1] 17:10
**'He** [1] 6:18
**'Hey** [1] 24:22
**'I** [1] 14:15
**'Oh** [1] 14:4
**'to** [1] 27:21
**'Well** [5] 5:7 11:9,12
12:12,24
**'What** [1] 14:4
**'Why** [1] 5:22

**-1-**

**1** [3] 2:20,21 3:4
**10** [1] 24:19
**110** [1] 31:17
**1101** [1] 1:15
**12** [3] 29:8,16 30:5
**13** [3] 21:13 29:8 30:5
**13-year** [1] 29:16
**130** [2] 10:10 30:24
**137** [2] 13:1 25:9
**15** [1] 25:24
**15-year** [2] 28:9,13
**162** [2] 10:10 30:24
**18** [4] 3:2,4 10:19 26:25
**19** [1] 25:25

**-2-**

**2** [3] 7:13 8:3 29:11
**20** [4] 25:25 28:4,5,6
**20-year** [1] 28:10
**2003** [1] 10:22
**2005** [1] 19:23
**2006** [2] 1:4 2:1
**21** [5] 2:19,20 3:14,24
10:7
**22** [2] 1:4 2:1
**222** [1] 1:12,18,21
**2350** [1] 1:24
**24** [1] 19:22
**24th** [2] 19:23 20:5

**27** [1] 10:9
**271-5071** [1] 1:13
**271-5494** [1] 1:19
**274-8664** [1] 1:16

**-3-**

**3** [1] 10:3,21 30:15
**30** [2] 10:25 11:1
**34639** [1] 1:24
**3553** [10] 3:3,4,7 10:19
27:7 28:16,16 30:15,22
30:25
**3584** [2] 27:1,6
**378-4031** [1] 1:25
**3:05-cr-00117-JWS**
[1] 1:2
**3:05-cr-117** [1] 2:13
**3C1.2** [1] 3:16

**-4-**

**4** [2] 3:7 30:22
**40** [2] 16:9 29:8
**45** [1] 16:11
**4:12:42** [1] 19:25

**-5-**

**5** [1] 30:22
**55** [1] 13:22
**5G1.3C** [1] 27:19
**5th** [4] 7:12,14,24 8:7

**-6-**

**6** [1] 30:25
**6/30/08** [1] 33:7
**60** [1] 25:9
**677-6102** [1] 1:22

**-7-**

**7** [1] 31:3
**70** [1] 8:16
**727** [1] 1:25
**7th** [4] 1:12,15,18,21

**-8-**

**841** [2] 2:20,21
**851** [1] 24:12
**8:38** [2] 1:4 2:3
**8th** [1] 8:13

**-9-**

**907** [4] 1:13,16,19,22
**99501** [1] 1:16
**99513** [3] 1:13,19,22
**9:17:15** [1] 32:6
**9th** [1] 8:13

**-A-**

**a.m** [3] 1:4 2:3 8:3
**ability** [2] 11:25 30:18
**above** [1] 33:4
**absolutely** [1] 16:24
**accelerating** [1] 8:15
**accomplished** [1] 31:2
**account** [3] 27:24 31:11
31:15
**accounting** [1] 19:11
**accounting's** [1] 21:5
**accurate** [2] 11:8 12:20
**achieve** [2] 27:21 31:8
**act** [1] 7:14
**actions** [4] 8:24 9:7,9
25:22
**acts** [1] 8:19
**addition** [1] 31:10
**additional** [2] 24:25
25:4
**address** [2] 3:16 26:23
**addressed** [1] 3:24
**adequate** [1] 29:21
**adjustment** [1] 10:4
**adjustments** [1] 3:14
**admissions** [1] 9:4
**adopt** [2] 3:20 10:6
**adversary** [1] 9:25
**advisory** [3] 3:15 9:12
10:8
**advocate's** [1] 21:21
**again** [7] 5:21 11:25
16:24 17:18 18:5 26:21
29:15
**against** [1] 26:2
**ago** [1] 11:1
**agree** [1] 16:25
**agreement** [2] 2:18
**ain't** [1] 26:4
**Alaska** [13] 1:1,3,13,16
1:19,22 2:1,5 12:17 23:4
23:17,18 25:22
**Albeit** [1] 7:12
**allowance** [1] 17:25
**allows** [1] 19:25
**almost** [5] 5:23 13:23
17:24 24:21 28:21
**alone** [1] 9:6
**altercation** [3] 4:17 7:8
9:17
**alternative** [1] 28:14
**alternatively** [1] 28:10
**always** [1] 28:12
**AMERICA** [1] 1:2
**Among** [1] 9:13
**amount** [2] 27:25 28:25
**analysis** [1] 17:6
**analyzed** [1] 14:13

**Anchorage** [7] 1:3,13
1:16,19,22 2:1,12
**answer** [7] 15:22 19:7
21:19,20 25:6,9,10
**answers** [1] 13:13
**apart** [1] 26:1
**apologize** [2] 25:22 26:9
**appeal** [7] 20:1,2,3,9 24:2
24:4,23
**appear** [2] 4:13 22:7
**APPEARANCES** [1]
1:10
**appcaring** [1] 11:2
**appellate** [1] 24:16
**application** [4] 3:4,7
10:3 31:4
**applied** [1] 6:5
**applies** [1] 10:4
**apply** [2] 6:2 14:14
**appointed** [1] 16:25
**approach** [1] 28:15
**appropriate** [6] 10:18
10:18 14:10 24:1 29:16
31:19
**April** [1] 1:20 21:7
**argue** [3] 6:25 7:7 31:6
**argument** [3] 13:8 23:7
23:10
**arguments** [2] 3:23 23:6
**armed** [1] 9:24
**arose** [1] 9:17
**arrest** [1] 10:5
**arrested** [5] 9:18 11:10
11:19 20:10 26:10
**arresting** [1] 9:16
**aspects** [1] 4:4
**assault** [3] 5:20,20 12:6
**assaulting** [1] 28:21
**Attorney's** [1] 1:12
**Audio** [1] 32:6
**automobile** [1] 7:1
**available** [4] 30:10,10
30:16,17
**Avenue** [10] 1:12,15,18
1:21 7:12,14 8:8,8,13,13
**Avenue's** [1] 7:24
**avoid** [2] 28:22 30:25
**aware** [2] 10:15 30:11
**away** [5] 5:4 11:15 13:21

**-B-**

**b** [4] 2:21,21 27:6 29:17
**bad** [1] 11:20
**baffled** [1] 23:20
**bail** [2] 20:3,9 24:2,23
**bandages** [1] 17:13
**bar** [1] 31:6
**barrier** [1] 4:24
**bars** [1] 29:22

**base** [1] 2:19
**based** [3] 10:5 12:24
25:13
**baton** [1] 6:19
**bear** [2] 11:22 30:14
**Bearing** [1] 29:7
**become** [2] 8:19 32:2
**began** [2] 20:10,11
**behalf** [1] 26:18
**behind** [1] 29:22
**Beistline** [2] 14:22,25
**Beistline's** [1] 15:3
**below** [1] 6:22
**benefit** [2] 24:9,9
**best** [3] 12:13 21:3 31:1
**Bethel** [1] 12:7
**better** [1] 26:14
**between** [1] 4:24
**big** [1] 13:19
**bill** [1] 25:5
**bit** [2] 4:12 7:5
**blessing** [1] 26:9
**blew** [1] 8:12
**block** [1] 8:12
**blowing** [3] 8:8,10,11
**blows** [2] 5:17 9:22
**bodies** [1] 5:18
**bodily** [3] 9:2,17,23
**body** [2] 5:24 9:22
**boil** [1] 23:7
**boiled** [1] 23:8
**Booker** [1] 12:25
**Box** [1] 1:24
**brief** [1] 8:6
**broke** [1] 15:25
**broken** [1] 13:16
**brought** [1] 11:22
**bubble** [1] 17:10
**Bureau** [1] 30:9
**busy** [2] 7:25 8:2

**-C-**

**c** [1] 30:2
**calculations** [1] 22:10
**calendar** [3] 22:10,13,18
**captured** [1] 28:22
**car** [3] 4:25 7:2,11
**Card** [1] 19:25
**care** [2] 30:8,12
**carry** [1] 5:21
**case** [25] 1:2 2:12 6:16 8:5
8:5 10:20 11:2 12:4,10,12
13:5 14:24 18:7,7,8,8
20:10,10,11,12,16,23 24:9
26:7 28:15
**category** [2] 10:9 29:23
**caught** [2] 26:5,7
**certain** [3] 8:2 18:19

20:15

**certainly** [18] 4:2,19,22 7:14,19 8:7,19,20 9:2,6 13:24 22:25 23:2 24:3,11 29:9,24 31:24

**certainty** [2] 25:8,15

**CERTIFICATION** [1] 33:1

**certify** [1] 33:3

**chance** [1] 25:20

**changing** [1] 26:19

**characteristics** [3] 3:6 28:19 29:3

**characterization** [2] 5:25 6:1

**charges** [1] 5:20 10:22

**chase** [1] 4:21

**check** [2] 16:23 19:19

**chest** [1] 5:15

**child** [1] 19:3

**choice** [1] 16:5

**choke** [1] 6:19

**choose** [1] 28:13

**chronological** [1] 4:5

**circumstances** [3] 3:5 28:18,19

**cited** [1] 8:6

**clear** [1] 10:4

**clearing** [1] 4:22

**clearly** [5] 4:13 7:1 15:23 30:4,4

**clears** [1] 16:23

**CLERK** [1] 2:4

**client** [1] 23:11

**client's** [1] 11:15

**clients** [1] 15:24 16:16 16:21

**climbing** [1] 8:21

**clock** [3] 20:13,16 22:22

**close** [2] 14:21 19:13

**closer** [2] 4:10 18:17

**club** [1] 13:21

**cocaine** [1] 2:19

**colleagues** [2] 16:12 31:5

**coming** [1] 5:6

**commenced** [1] 19:10

**comments** [2] 7:8 10:19

**commission** [3] 3:9 27:13,16

**commit** [1] 24:23

**committed** [1] 29:5

**communities** [1] 13:16

**community** [11] 12:8,15 13:16,24,25 14:11,14 17:3 25:12 26:4 31:21 32:3,5

**compare** [1] 8:5

**complete** [1] 13:11

**compromise** [1] 13:2

**computers** [1] 11:7

**concern** [2] 3:16 31:19

**conclude** [2] 27:23 31:17

**conclusion** [1] 15:4

**concurrent** [11] 24:21 25:1,3 26:24 27:5,9,11,20 27:21 28:7,11

**concurrently** [1] 10:21

**conduct** [6] 8:6 10:4 11:24 27:18 29:18 31:21

**confirmed** [1] 29:4

**confusion** [1] 28:13

**Congress** [1] 13:6 27:7

**consecutive** [6] 26:24 27:4,9,11,21 28:9

**consecutively** [1] 31:18

**consent** [1] 16:22

**consequence** [1] 16:20

**consequences** [1] 15:3

**consider** [8] 3:2 7:10 27:7,10 28:17 29:13 30:15 30:22

**consideration** [4] 3:5,8 29:9 31:3

**considerations** [2] 30:24 31:15

**considered** [3] 24:11 27:17 30:20

**considering** [1] 27:13

**consistently** [1] 23:5

**constant** [1] 23:5

**constitutional** [1] 16:10

**contact** [1] 5:1

**contained** [1] 3:18

**contains** [1] 29:11

**contest** [1] 18:4

**contributing** [1] 32:3

**contusions** [1] 5:14

**convicted** [4] 14:23 24 24:22

**conviction** [1] 30:16

**convictions** [1] 11:4 23:22

**coordinated** [1] 5:11

**copy** [1] 20:2

**coral** [1] 16:10

**correct** [6] 13:5 19:1 21:15 22:15,17 33:3

**correctional** [2] 13:12 30:8

**Corrections** [1] 11:18

**counsel** [5] 10:12,18 20:13,17 29:18

**count** [1] 2:18

**country** [1] 13:20

**course** [10] 3:25 7:7 8:4 8:18,21 10:5 12:16 21:16 22:9 30:19

**court** [101] 1:1,20,21 2:3 2:4,5,8,11,17,24 3:1,21 4:3,3,8,10,12,16 5:16 6:7 6:10,13,24 7:9,15,23,25

8:2 9:10 10:17 11:1,25 14:4,12,17 15:6,9,9,13,17 15:19 16:1,8,9,12,13,16 16:18,21,22,23 17:22,24 19:9,10,13,18,22 20:1,7 21:6,9,11,13,21,23 22:2,4 22:7,11,14,16,19,23 23:12 23:16,17,24 24:5,25,25 25:18 26:22,24 27:4,7,10 27:13,20,23 28:2,3,6,9,13 29:12 30:15,25 31:6,13 31:17

**courts** [1] 23:19

**create** [3] 9:1,23 28:13

**created** [1] 9:7

**credit** [1] 20:23

**crime** [1] 10:13 27:15,17

**crimes** [4] 24:7,23 29:5 30:3

**criminal** [6] 2:12 10:9 11:3 23:1,11,18

**criteria** [4] 17:4 19:1,8 21:18

**Cross** [1] 17:13

**–D–**

**d** [1] 30:6

**damage** [1] 4:7

**danger** [3] 17:3 26:3 32:4

**dangerous** [2] 25:11 31:22

**data** [1] 17:10

**date** [3] 11:9 20:15 33:7

**day-to-day** [1] 6:21

**days** [3] 11:15 13:22 21:24

**deal** [2] 15:13 24:17

**dealer** [1] 29:2

**dealing** [4] 20:11 23:21 28:23 29:22

**deals** [1] 17:23 31:3

**death** [3] 6:1 9:2 14:24

**decade** [1] 12:3 18:24

**December** [1] 21:6

**deciding** [1] 27:8

**decision** [3] 18:19,20,20

**decisions** [1] 18:21 26:14

**default** [1] 17:5

**defendant** [25] 1:6,14 2:23,25 3:6 20:1,19,25 21:2 23:15 24:2,4,7,11,22 25:21 27:14,25 28:4,19 29:3 30:3,7,13 31:12

**defendant's** [2] 10:20 24:10

**defense** [1] 31:6

**demonstrate** [1] 4:21 5:9

**denies** [1] 24:17

**Department** [1] 11:18

**describe** [1] 15:24

**described** [1] 5:5

**despite** [1] 24:2

**detailed** [1] 9:14

**deter** [5] 14:19 19:3 29:17 29:19,21

**determine** [1] 28:3

**determining** [2] 3:1 27:24

**deterred** [3] 15:19 25:8 29:24

**deterrence** [10] 13:15 14:9,13 15:14 16:2 17:2 18:11,11,12 25:7

**difference** [1] 11:21

**different** [5] 4:4 15:2 17:1 23:15 27:2

**difficult** [2] 21:5 29:19

**dilemma** [1] 19:24

**directed** [1] 31:7

**directs** [2] 27:7 30:25

**discretion** [1] 30:14

**discuss** [1] 2:24

**discussed** [2] 15:5 17:4

**discussing** [1] 12:12

**discussions** [1] 17:20

**disparities** [1] 31:1

**displays** [1] 31:21

**distinct** [1] 29:12

**distinguish** [1] 17:19

**distribute** [1] 2:9

**district** [7] 1:1,1,9,21 2:5 2:5 15:10

**doesn't** [5] 15:4,22 18:14 23:13 30:19

**doubt** [5] 5:21 6:7 7:15 9:22

**down** [9] 7:12,13 8:7,8 11:10 23:8,8 24:17 26:12

**drive** [1] 7:3

**driving** [4] 4:13 7:10,11 7:13,18 8:24 9:4

**drop** [2] 16:6 17:11

**drove** [1] 7:12

**drug** [4] 10:22 24:7 28:23

**drug-consumption** [1] 14:24

**drugs** [6] 13:17 15:3,14 23:22 28:25 29:2

**during** [2] 23:5 30:10

**DWI** [2] 14:1,7

**–E–**

**early** [1] 24:13

**easily** [1] 30:5

**educate** [1] 15:2

**educational** [2] 13:12 30:7

**effective** [1] 30:8

**eight** [2] 17:11 23:24

**either** [3] 14:2,18 28:9

**elderly** [1] 30:13

**elders** [1] 12:12

**electronic** [1] 33:4

**embarrassing** [1] 11:1

**emerges** [1] 31:25

**employ** [1] 28:15

**en** [1] 10:21

**end** [4] 8:25 18:1 19:6,24

**endanger** [1] 8:20

**endangered** [1] 7:18

**endangerment** [3] 3:15 3:23 7:6 9:12

**ended** [1] 5:13

**engaging** [1] 29:21

**enhance** [2] 24:12,14

**enhancement** [3] 3:23 7:16

**enhancement's** [1] 9:9

**entire** [1] 12:14

**entitled** [1] 33:5

**especially** [1] 23:13

**established** [1] 13:6

**establishing** [1] 12:21

**event** [1] 8:4

**everybody's** [1] 10:2

**evidence** [5] 3:19 7:4,17 13:10 17:15

**evidentiary** [1] 4:21

**exactly** [4] 14:22 19:9 21:18 24:8

**example** [1] 28:3,14

**examples** [2] 12:19 28:1

**exception** [1] 3:12

**experience** [2] 23:1,3

**explained** [1] 11:14

**expose** [1] 9:16

**exposed** [1] 9:20

**extent** [1] 3:25

**extra** [1] 18:24

**extreme** [2] 21:16 25:2

**eye** [1] 6:4

**eyes** [1] 6:18

**–F–**

**facing** [1] 11:5

**fact** [10] 3:18,20 7:24 9:24 10:6 14:10 23:20 24:3 28:16 31:11

**factor** [2] 29:6,10,11,12 29:17 30:2,4,6

**factors** [5] 3:2 12:1 27:8 27:10 28:16 29:15

**facts** [8] 3:3,13 4:20 5:9 8:5,17 9:11,13

**factual** [1] 3:11

**fair** [3] 5:25,25 14:10

**fairly** [1] 6:10

**falls** [1] 29:23

familiar - members
Imposition of Sentence

Condenseit!

familiar [2] 12:4 14:3
family [1] 12:16
Fanfan [1] 12:25
far [2] 10:25 20:24
fatalities [1] 14:7
fatality [1] 14:1
fearsome [1] 16:2
February [7] 19:14,19
  19:22,23 20:5 21:7 31:14
federal [10] 11:25 13:20
  13:23 14:9 17:11 22:14
  23:7,12,16 24:25
felony [2] 11:5 30:16
felt [1] 15:11
fence [4] 4:23 5:3,10,10
fences [1] 8:21
fight [4] 6:6,6 8:25 13:19
fighting [1] 6:17
figured [1] 11:18
filing [1] 24:12
final [2] 24:15,16
finally [1] 31:5
findings [3] 3:3,20 10:6
fine [2] 10:11 30:17
firearms [1] 8:22 9:1
first [3] 3:17 5:4,7,11
  20:10 25:21 26:8,23 27:3
  28:10,17
fishing [1] 12:14
fistfight [1] 5:23
fists [1] 5:17
five [17] 10:21 13:11,20
  13:23 14:9 18:16 19:4
  20:25 21:9,19,19 24:1
  28:8,11 29:20,22
five-foot [1] 4:23
five-year [1] 25:2
fleeing [1] 8:24
Florida [1] 1:24
focus [3] 4:16 17:2,16
focused [1] 7:8
folded [1] 17:12
folks [6] 14:1,4,7,25 15:4
  16:9
following [1] 30:20
foot [1] 4:21
foregoing [1] 33:3
form [1] 5:13
forth [3] 4:20 13:8 17:5
Fortunately [1] 13:3
foster [1] 17:14
four [6] 16:18 22:8,12,17
  29:11 31:12
four-and-a-half-foot
  [1] 4:23
FRANK [1] 1:11
frankly [1] 21:17
free [1] 18:9
freebie [1] 24:24
freedom [1] 11:16

Friday [1] 11:19
Friday's [1] 18:3
front [1] 11:2
function [2] 18:5,6
future [2] 17:7 25:14

-G-

garage [1] 7:2
garden [1] 6:5
gather [1] 12:8
general [3] 14:9 15:24
  25:7
generally [1] 31:1
generous [1] 22:14
given [3] 2:12 9:14 25:16
giving [1] 17:23
goals [2] 23:2 31:9
God [1] 26:10
goes [1] 23:10
golly [1] 17:12
gone [2] 15:1,2
good [5] 2:8,9,10 13:22
  22:10
government's [1] 17:9
grab [2] 6:19,19
great [1] 28:22
greater [1] 31:8
group [1] 29:25
guess [3] 7:16 15:10
  23:25
guideline [10] 3:15,16
  9:12 10:3,8 27:12,19
  30:23,23 31:2
guidelines [2] 3:8 12:22
guilty [2] 2:17
gun [1] 6:19
guns [3] 23:21 26:5,6
guy [1] 13:17
guys [1] 14:8

-H-

half [1] 23:4
hand [3] 6:20 18:21 28:7
hands [1] 5:23
hard [1] 7:22
harsh [1] 31:11
hat [1] 17:11
head [4] 5:17 9:19,22 23:8
hear [8] 3:22,25 6:17 7:6
  10:12,18 14:20 22:24
hearing [2] 4:21 20:2
heart [2] 26:11,20
Heinrich [2] 33:7,7
help [2] 19:16 26:11
helpful [1] 13:5
himself [5] 4:24 9:5,8,16
  25:11
hindsight [1] 18:20

history [7] 3:6 10:9 23:21
  24:7,7 28:18 29:3
hitch [1] 18:17
hmm [4] 4:11 15:12 22:1
  22:3
hold [1] 5:8
Homer [1] 11:10
homicide [2] 23:23
  25:23
Honor [10] 2:4,10,15 7:9
  10:16,23 13:7,7 22:25
  23:3
Honorable [2] 1:9 2:6
hope [2] 13:4 31:25
hopefully [2] 17:21
  18:22
hopes [1] 9:5
hour [1] 8:16
human [1] 9:22
hurt [1] 25:11
hyperbole [1] 17:25

-I-

illegal [1] 29:2
immediately [2] 18:22
  20:12
impact [3] 17:8,8 23:7
impacted [1] 13:25
impacting [1] 5:24
important [6] 6:15 11:23
  11:23 16:10 17:18 21:25
impose [2] 13:7 25:1,8
  27:20 30:1 31:7
imposed [9] 3:2 10:14
  24:21 25:19 26:24 27:2,4
  30:20 31:13
imposition [3] 1:5 27:3
  27:14
impossible [1] 14:14
impressive [1] 6:11
imprisonment [2] 27:15
incarcerated [1] 28:4
incarceration [4] 10:10
  30:11,17,21
inclined [1] 7:5
including [3] 23:22
  28:21 31:16
increase [2] 3:14 9:11
indeed [5] 16:4,4 28:14
  30:20 32:1
indicates [1] 27:19
individual [2] 28:20
  31:22
infer [1] 9:6
information [1] 12:8
initiated [1] 5:1
injuries [1] 6:5
injury [5] 6:2 9:2,7,17,23
input [2] 12:9,23
inquire [1] 10:13

inside [1] 6:20
installment [1] 18:2
instant [3] 27:17,18,22
instead [1] 32:3
intent [1] 2:18
interaction [1] 4:6
inured [1] 24:9
inures [1] 24:8
involved [3] 23:23 25:23
  28:25
issue [1] 27:11
It'd [1] 5:25
it'll-never-happen [1]
  29:24
italicized [1] 15:21
itself [1] 29:11

-J-

jail [5] 12:14 14:15 18:15
  20:22 26:15
January [1] 21:7
John [4] 1:9,14,15 2:6
Jones [3] 28:4,5,7,9
judge [3] 1:9 11:2,8,12
  11:13 12:7 14:22,25 15:1
  15:3 16:9 19:25 25:14
jump [1] 7:2
jumping [1] 8:16
June [3] 1:4 2:1 21:7
jury [2] 11:4 23:24
justice [2] 23:1,11
juvenile [2] 23:23 25:23

-K-

Karluk [1] 8:8
KARPER [1] 1:20
keeping [1] 11:8
kicked [1] 5:17
kicking [2] 5:24 9:20
kicks [1] 9:22
kid [3] 15:11,13,15
kids [5] 15:17,17 17:10
  17:14 18:3
killing [1] 9:5
kind [5] 6:22 7:8 13:1
  20:5 21:5

-L-

Lakes [1] 1:24
Land [1] 1:24
landed [2] 5:12,16
last [4] 17:4 20:18 24:17
  31:3
law [5] 1:15 15:25 18:15
  29:5,14
laws [1] 7:20
lawyer [1] 2:24
lawyers [1] 12:7
lawyers' [1] 3:22

lead [1] 16:7
leaf [1] 32:2
least [2] 19:18 31:21
left [2] 22:4,8,18
leg [1] 5:3
legislature [1] 12:17
lengthy [1] 25:16
lenient [2] 23:11,12
less [3] 22:8,20 28:12
level [3] 3:15 9:13 10:9
life [8] 12:25 13:18 26:11
  26:13,14,17,19,21
likely [1] 28:12
line [1] 16:9
lines [1] 15:21
literally [2] 16:23 28:20
lives [1] 8:20
log [4] 19:15,16,25 32:6
look [13] 4:3 5:22 8:23
  9:3,8 12:1,19,23 13:5
  21:21 23:14 24:20 25:14
looked [2] 24:10,10
looking [4] 4:3 12:9
  16:18 19:2 24:19 28:16
looks [2] 6:10,13
lucky [1] 23:17
Luna [2] 8:5,18
Lusk [1] 14:23

-M-

major [1] 29:2
makes [1] 10:3
man [8] 6:13,14 7:12
  12:24 18:9 23:21 25:11
  31:21
man's [1] 29:23
mandatory [1] 24:19
manner [2] 5:11 30:9
March [2] 10:21 21:7
Mark [1] 11:2
masse [1] 18:3
matter [6] 7:1 17:24
  20:17 21:24 28:24 33:5
matter's [1] 3:24
matters [1] 29:25
mature [1] 26:13
maximum [1] 29:7
may [3] 20:4 21:7 25:14
  27:5
McKenzie [1] 14:5
mean [5] 6:3,20 7:1,11
  7:18 14:12,19 15:23,23
  16:16,19,20 24:18
means [3] 9:24 15:24
  22:19
medical [2] 30:8,12
meets [1] 19:1
member [1] 32:3
members [1] 32:4

**memo** [1] 9:3
**memorandum** [4] 4:5 13:4 17:4 18:18
**mentioned** [1] 16:5
**message** [3] 14:25 15:5 18:10
**might** [3] 17:3 30:12,13
**miles** [1] 8:16
**mind** [2] 9:21 29:7
**minimum** [1] 24:19
**minor** [1] 18:23
**minutes** [1] 16:11
**misdemeanor** [2] 5:20 16:9
**Mitch** [2] 11:3,19
**mitigates** [1] 28:24
**Mm** [4] 4:11 15:12 22:1,3
**modest** [1] 29:1
**moment** [2] 3:17 11:1
**month** [1] 12:3
**months** [11] 10:10 13:1 20:25 21:1,13,18,19 25:9 25:9 30:24 31:18
**morning** [6] 2:8,9,10,11 4:1 7:13
**most** [6] 11:1 12:15 14:17 21:16 26:25 30:8
**Motor** [1] 7:19
**mouth** [1] 6:20
**movie** [4] 15:9,10,14,14
**moving** [2] 7:2 8:17
**Murtagh** [56] 1:14,15 2:10,16 3:25 4:2,9,11,15 4:19 5:19 6:9,12,15,24 8:9 9:21 10:22,23 14:16,21 15:8,12,16,18,20 16:4,14 16:19 19:11,15,20,23 20:8 20:20 21:1,3,8,10,12,14 22:1,3,6,9,12,15,17,21,23 23:1,3 24:13,13 25:2 31:5
**must** [4] 3:2 27:10 30:19 30:20

**-N-**

**named** [1] 28:4
**nature** [3] 3:5 28:17,19
**necessary** [3] 13:7,14 31:8
**need** [3] 3:3 10:13 22:24 24:3 29:13
**needed** [1] 30:7
**needs** [3] 4:3 13:10 20:1
**negative** [1] 13:13
**never** [7] 8:3 13:18 15:15 16:7,23 26:4,5
**new** [4] 4:2 17:21 32:2
**next** [2] 27:6 29:11
**nine** [1] 17:12 21:19
**nobody** [2] 7:18 26:4
**non-thinking** [1] 13:25
**none** [2] 10:14 18:21

**note** [2] 10:3,3
**notes** [3] 19:15,17,25
**nothing** [2] 4:2 28:21
**notice** [3] 7:23 20:2 24:12
**November** [1] 21:6
**now** [5] 2:5 11:25 17:13 25:19 29:11
**number** [5] 2:12 11:3 13:1,2,2

**-O-**

**O** [1] 1:24
**O'Connor** [1] 14:23
**objections** [1] 3:11
**occasion** [1] 27:3
**occurrence** [1] 18:23
**occurs** [1] 10:4
**October** [3] 20:19,20,21
**off** [1] 16:6
**offense** [3] 3:5,15 9:13 27:17,18,22 28:18,20 29:14
**Office** [3] 1:12,15,18
**officer** [12] 4:24 5:1,4,6 5:7,9,12,12,14 8:9,13 9:19
**officers** [9] 4:6 5:18 6:17 8:20,25 9:16,20,24 28:21
**old** [1] 25:25
**older** [1] 31:23
**once** [3] 10:1 16:23,25
**one** [22] 2:18 5:14 6:7 9:2 9:3,19 10:25 11:15,20 12:14 14:11,15 15:11,13 15:15 16:18 18:21 19:3,5 23:5 27:10 28:17
**one-stop** [1] 20:14
**opportunities** [1] 30:7
**oppose** [1] 25:4
**opposed** [2] 23:16 25:9
**order** [2] 2:3 4:5 13:11
**orders** [1] 27:5
**originally** [1] 8:14
**otherwise** [1] 31:11
**ought** [1] 31:24
**overseas** [1] 17:14
**own** [1] 9:4

**-P-**

**p.m** [1] 19:25
**P.O** [1] 1:24
**papers** [1] 3:25
**paragraph** [5] 3:14,24 10:7 16:7 27:6
**parked** [1] 5:6
**parole** [1] 13:22
**parse** [2] 17:1 21:24
**parsimony** [2] 12:2 13:6
**part** [1] 25:22
**PARTIAL** [1] 1:8

**partially** [2] 5:2 27:20
**particular** [1] 31:19
**parties** [1] 2:13
**past** [5] 10:25 23:17 25:6 25:13 31:21
**PATRICIA** [1] 1:17
**pay** [1] 30:18
**penalty** [1] 2:20
**pencil** [1] 6:3
**pending** [5] 20:1,3,9 24:2 24:23
**people** [11] 4:14 7:4 12:10 14:18 15:2 17:23 25:24 26:2,5 29:19,25
**per** [1] 8:16
**perfect** [2] 18:20,21
**Perhaps** [1] 9:20
**period** [1] 30:21
**person** [6] 5:2 6:11 11:20 16:22 19:5 24:18
**personal** [1] 28:22
**perspective** [1] 23:15
**phase** [1] 20:6
**physical** [4] 4:24 5:1 6:2 9:7
**physique** [1] 6:11
**pick** [3] 11:13 18:25 25:5
**picked** [1] 12:17
**Pistro** [2] 11:3,3
**place** [3] 4:23 18:8 26:1
**places** [1] 15:2
**plain** [1] 5:12
**Plaintiff** [2] 1:3,11
**plan** [1] 18:2
**plea** [1] 2:18
**plead** [1] 18:4
**pleading** [1] 15:21
**pled** [1] 2:17
**Plus** [1] 21:9
**point** [7] 4:20 5:14 14:5 24:20 26:6 27:19 30:24
**pointed** [5] 8:9 9:3 15:1 21:4 24:14
**police** [4] 8:20,25 13:18 28:21
**policy** [1] 30:23
**politics** [1] 13:2
**portion** [2] 18:15 32:7
**poses** [1] 32:4
**posited** [1] 18:18
**position** [2] 3:12 21:21
**positive** [1] 32:3
**possession** [2] 2:18
**possible** [4] 18:25 21:17 29:7 30:18
**post** [2] 20:8,8,8
**potential** [1] 6:1
**powerful** [1] 9:25
**practice** [2] 6:21 16:21

**pre** [1] 12:9
**precedes** [1] 18:8
**precise** [1] 12:20
**predictable** [1] 24:6
**prepared** [2] 2:14,21 32:1
**preponderance** [1] 3:19
**presentation** [1] 19:3
**presentence** [9] 2:21,22 3:11,13,18 9:15 10:6,7 19:18
**presiding** [1] 2:6
**presumptive** [1] 11:6 12:10
**pretrial** [3] 1:18 20:6,22
**pretty** [4] 4:17 14:21 16:2 19:13
**prevailed** [1] 24:4
**previous** [1] 7:10
**Prince** [34] 1:5 2:13,17 2:21 3:12 4:22 5:2,2,10 5:15,16 6:10 9:4,15 10:12 13:10 14:3 16:2 17:8,16 17:20 18:7 19:5 20:15,20 25:10,16,18 26:22 29:1 30:10,18 31:16,23
**Prince's** [2] 25:6 28:15
**principle** [3] 12:2 13:6 15:23
**principles** [1] 12:5
**prison** [9] 13:11,20,23 14:10 17:11 18:24 24:19 29:8 31:25
**Prisons** [1] 30:9
**probation** [6] 1:17 14:4 17:20 18:5,7 20:3
**problem** [1] 7:16
**proceed** [2] 2:14 16:22
**proceeding** [1] 3:21
**proceedings** [3] 1:8 2:11 33:4
**process** [4] 5:2 12:21 14:11 18:4
**program** [2] 13:12,12
**programs** [1] 30:9
**progress** [1] 26:19
**promotes** [1] 29:14
**promptly** [1] 19:23
**property** [1] 4:6
**prosecuted** [2] 23:16,18
**prosecutor** [1] 23:14
**protect** [2] 30:2 31:20
**protected** [1] 25:16
**protest** [1] 18:6
**proven** [1] 25:11
**provide** [2] 12:15 30:6
**provides** [1] 29:14
**provisions** [1] 2:20
**public** [5] 4:19 18:23 25:7,15 30:3
**published** [2] 3:8 27:12
**pull** [1] 10:1

**pulling** [1] 5:3
**punched** [1] 9:19
**punished** [1] 28:23
**punishment** [2] 23:2 27:22 29:15
**pursuant** [1] 3:16
**pursuing** [1] 4:25
**put** [2] 18:15 29:22

**-Q-**

**questions** [2] 15:22 25:10
**Quite** [1] 25:5

**-R-**

**ran** [1] 13:18
**range** [5] 10:8 29:8,16 30:23 31:2
**rationale** [1] 25:3
**read** [1] 2:22
**reading** [1] 16:10
**real** [3] 11:12 19:11 22:20
**realize** [1] 21:23
**realizes** [1] 29:21
**really** [19] 6:5,6 8:10 11:22,22,23 12:13 13:15 14:19 15:6 16:3 17:16,16 19:4 25:13 26:4,6,18 31:24
**reasonable** [1] 27:22
**reasonably** [1] 3:19
**reasons** [1] 15:5
**recalls** [1] 20:20
**recidivist** [1] 29:4
**recited** [1] 3:13
**reckless** [10] 3:15,23 4:13 7:1,5,14,15,20 8:19 9:12
**recollection** [1] 21:3
**recommendation** [1] 17:9
**record** [6] 11:8 13:10 16:3 21:22 23:22 24:10
**Recorder** [1] 1:20
**recording** [1] 33:4
**red** [3] 11:13,14 17:13
**reflected** [2] 5:20 9:14
**reflects** [1] 29:13
**regarding** [3] 3:23 10:18
**relatively** [1] 28:25
**release** [5] 17:19 18:13 18:16,22 30:19
**released** [2] 5:11,12
**relevant** [4] 9:13 26:25 27:12,18
**reliable** [1] 3:19
**rely** [1] 23:9
**remain** [2] 20:1,2
**remaining** [1] 31:18
**remanded** [3] 20:12,16

20:21
**remarks** [1] 10:24
**remember** [1] 11:23
12:19 19:19
**report** [9] 2:21,22 3:11
3:13,18 9:15 10:6,8 19:18
**represented** [1] 14:2
**request** [4] 10:20 21:16
21:17 25:2
**Requested** [1] 32:7
**require** [1] 30:22
**required** [1] 27:25
**requires** [7] 3:7 28:17
29:12,17 30:2,6,15
**requiring** [1] 3:4
**resisting** [1] 10:5
**resolve** [1] 20:14
**resources** [1] 18:6
**respect** [6] 9:12 27:11
29:4,14,15,24
**response** [1] 16:21
**responsibility** [2] 16:6
26:7
**rest** [1] 26:21
**restitution** [2] 13:9 31:4
**result** [2] 5:3 15:14
**reverse** [1] 4:4
**revoked** [1] 18:22
**ridiculous** [2] 16:24
21:24
**right** [32] 4:15 6:9,12,15
6:24 9:10 10:5,17 13:18
13:21 14:16 15:8,16,18
16:19,19 20:7 21:8,8,12
21:14,19,20 22:6,9,11,19
22:23 25:19 26:13,22
29:18
**rights** [1] 16:10
**rise** [1] 2:4
**risk** [6] 7:4 9:1,7,23 10:2
18:23
**risked** [1] 17:10
**risks** [1] 28:22
**roughly** [3] 21:11,25 22:7
**Rowland** [1] 11:2,9,14
**run** [3] 7:2 10:20 31:18
**Russo** [5] 1:11 2:9,15
6:25 7:9,23 8:1,4 9:10
10:15,16 17:22 22:24,25
25:18

**-S-**

**s/Tammie** [1] 33:7
**sanction** [1] 18:25
**Saturday** [1] 1:17
**says** [3] 21:18 24:21 27:1
**scaling** [1] 8:21
**scene** [2] 5:4,7
**school** [2] 15:10 17:13
**schools** [1] 15:1
**science** [1] 12:20

**scientists** [1] 12:23
**season** [1] 12:14
**seated** [1] 2:7
**second** [2] 5:6,9
**Sedwick** [1] 1:9 2:6
**see** [10] 6:16,16,18,21 7:3
7:7 10:14 13:17 17:22
18:6
**seeing** [2] 15:14 17:23
**seem** [2] 20:23 23:13
**self** [2] 18:11,12
**selfish** [1] 11:20
**sense** [1] 23:13
**sentence** [70] 1:5 3:1
10:10,14,19,20 11:6,9,11
11:21,24 12:6,10,13,16
12:18,24 13:8 16:8 18:9
19:10 20:4 22:18 23:10
23:25 24:12,14,15,17,21
25:1,3,9,16,19 26:23 27:2
27:3,8,14,21,24 28:6,6,7
28:8,9,10,10,11 29:6,8,13
29:16,17,20 30:2,4,5,6,17
30:24 31:2,7,10,13,17,19
31:19,20
**sentenced** [4] 19:20,20
23:24 27:16
**sentences** [4] 16:7 23:6
23:7 30:16
**sentencing** [13] 3:9 4:5
9:3 11:17 12:22 19:16,17
19:24 20:9 27:13 30:14
31:1,9
**sentencings** [2] 14:22
17:18
**separate** [1] 23:14
**serious** [9] 4:18,19 6:1
8:7 9:2,17,23 12:11 29:5
**seriousness** [1] 29:13
**serve** [6] 22:5 27:25 28:5
28:8 31:12,17
**served** [4] 16:7 18:1,9
22:2
**Server** [1] 32:6
**Service** [1] 1:23
**Services/Probation**
[1] 1:18
**serving** [2] 10:21 20:4
**session** [1] 2:6
**set** [6] 3:14 4:20 12:5 13:8
17:5 26:12
**seven-year** [1] 11:21
**several** [2] 23:8 28:1
**sexual** [1] 12:6
**shaky** [1] 19:12
**shameful** [1] 12:15
**Shannon** [2] 1:5 2:13
**shopping** [1] 10:14
**shortest** [1] 18:25
**shot** [2] 26:4,4
**show** [3] 18:3 28:20 29:3
**showing** [1] 24:3

**shown** [1] 15:10
**sick** [1] 31:24
**sickly** [1] 30:13
**side** [3] 5:8,9 31:6
**sign** [4] 9:10,11,12
**significant** [1] 16:8
**similar** [1] 8:17
**simpler** [1] 28:12
**simply** [3] 23:17 25:5
**sitting** [1] 26:15
**six** [4] 11:6 20:25 21:1,18
**skillful** [1] 11:8
**slippage** [1] 11:21
**small** [1] 6:13
**social** [1] 12:23
**someone** [5] 5:23,24 6:4
14:3 32:4
**somewhat** [1] 23:9
**somewhere** [1] 24:15
**sort** [3] 4:4 17:5 21:24
**sound** [1] 33:4
**sounds** [1] 14:13
**source** [1] 29:2
**speak** [3] 10:14 25:19,20
**special** [1] 30:12
**specialized** [1] 6:17
**specific** [5] 12:24 16:1
17:2 27:18 30:11
**specified** [1] 3:2
**speeds** [1] 8:15
**spent** [1] 30:2
**spin** [1] 18:24
**squad** [1] 4:25
**stage** [1] 12:25
**standard** [1] 14:6
**standards** [1] 28:25
**start** [8] 10:12,11,12
15:13 18:4 24:20 25:21
26:12
**started** [2] 20:13 21:16
**starting** [2] 20:16 23:22
**state** [42] 5:20 10:22 11:2
11:18 14:4 15:1 16:8,13
16:22 17:9,20,21,24 18:8
19:10 20:10,11,16,23 22:8
22:10 23:4,16,18 24:14,17,18
23:24 24:5,15,16,22,25
25:22 27:24 28:5,7,8,11
31:13,17,18
**state's** [1] 23:10
**statement** [1] 14:11
**statements** [3] 3:11,18
30:23
**states** [5] 1:1,2,9 2:5,13
3:8 12:22 23:14 27:12
**status** [1] 20:2
**statute** [2] 26:25 31:7
**step** [1] 20:12
**still** [6] 7:13 8:17 26:6
28:5 31:12,16

**stop** [5] 8:8,10,11,12
28:20
**story** [1] 14:6
**straighten** [1] 26:17
**straightened** [1] 17:12
**street** [4] 7:18,21,22 8:2
**street-level** [1] 29:1
**streets** [1] 7:3
**stretch** [2] 4:12 7:5
**strike** [1] 6:4
**strong** [2] 6:14 9:25
**strongly** [1] 24:11
**struck** [1] 9:25
**struggle** [1] 5:13
**stuff** [1] 13:21
**subcategories** [1] 29:12
**subject** [2] 2:20 27:14
**substantial** [5] 9:1,7,23
29:6 30:4
**success** [1] 15:15
**successful** [1] 16:13
**such** [5] 9:25 29:18 30:12
**sufficient** [3] 29:17 31:8
31:20
**suggest** [1] 4:16
**suggested** [1] 32:1
**suggests** [2] 19:19 29:1
**Sunday** [1] 11:13,19
**supervised** [6] 17:19
18:13,14,16,22 30:19
**supplement** [1] 21:4
**support** [5] 3:13 6:1 7:5
9:11 29:6
**supported** [2] 3:19 29:9
**supporting** [1] 17:14
**supports** [1] 30:4
**Suppose** [1] 28:3
**supposed** [1] 30:9
**suspect** [1] 17:22
**suspended** [2] 18:1
23:25
**sweet** [1] 17:23
**swinging** [1] 5:23
**system** [5] 16:8 17:20
23:2,11 24:16

**-T-**

**takes** [1] 3:12
**taking** [5] 21:20 26:9,19
28:22 31:15
**Tammie** [1] 33:7
**TAMSCRIPTS** [1]
1:23
**tautology** [1] 23:9
**temptation** [1] 10:1
**tend** [1] 29:20
**term** [6] 6:2 16:16,18
18:16 27:15 30:10
**terms** [1] 6:11

**terrible** [1] 6:4
**testified** [1] 26:1
**testimony** [2] 5:19 9:14
**Thank** [7] 6:24 9:10
10:23 22:23 25:16,18
26:22
**therefore** [1] 23:12
**They've** [1] 17:13
**thinking** [3] 13:9,16,24
14:11,14 26:13 29:23
**thoroughfare** [1] 8:1
**thought** [2] 11:20 20:13
**thoughts** [2] 26:16
**three** [5] 17:25 18:2 22:20
23:4,25
**through** [1] 13:4
**throwing** [1] 11:15
**Thursday** [2] 1:4 2:1
**timely** [1] 5:11
**times** [1] 23:8
**to-me** [1] 29:25
**today** [5] 3:2 13:3,9 20:11
32:2
**today's** [1] 13:8
**together** [4] 10:19 26:11
26:16,17
**too** [6] 6:21,22 16:12 19:5
23:11 31:11
**took** [2] 18:8 26:6
**top** [2] 5:12,14
**toss** [1] 6:3
**total** [1] 27:24
**totality** [1] 8:23
**track** [2] 19:5 26:13
**tracks** [1] 13:4
**training** [1] 6:17
**Transcriber** [1] 33:7
**transcript** [3] 1:8 4:20
33:3
**Transcription** [1] 1:23
**treatment** [2] 30:8,12
**trial** [3] 11:4 20:8 21:1
**tried** [4] 6:18,19,19,20
**try** [6] 5:7 11:23 12:1,5
15:2 21:24
**trying** [1] 26:16
**turn** [1] 32:2
**turned** [2] 11:13,14
**twitching** [1] 5:23
**two** [12] 4:4 6:7 8:25
10:24 11:15 12:19 13:16
15:17,21 17:3 23:14 26:9
**two-level** [1] 3:14
**type** [1] 5:4
**types** [1] 30:15

**-U-**

**U.S** [3] 1:12,18,21
**U.S.A** [1] 14:23

**U.S.C** [6]  2:19,20 3:3,4
   10:19 26:25
**unclear** [3]  8:10,11,11
**under** [2]  10:19 12:1
**understand** [1]  22:16
**undischarged** [1]  27:15
**unfortunately** [1]  6:4
**unique** [1]  4:2
**United** [8]  1:1,2,9 2:4,13
   3:8 12:21 27:12
**unless** [1]  27:4
**unlucky** [1]  23:16
**unresolved** [1]  3:10
**unwarranted** [1]  30:25
**up** [12]  5:13 12:5,8 13:16
   16:9 17:12 18:1,3 19:6
   23:6 25:5 26:17
**used** [1]  3:4
**uses** [1]  3:21
**using** [3]  6:16 15:3 23:21

### -V-

**variety** [1]  6:6
**vehicle** [4]  4:6 5:6 7:19
   8:16
**verdict** [1]  20:8
**versus** [1]  27:11
**VI** [1]  10:9
**victim** [1]  10:13
**video** [1]  19:3
**view** [3]  4:20 5:25 28:12
**village** [1]  12:7
**violate** [1]  18:15
**violates** [1]  18:14
**violation** [2]  2:19 7:19
**violence** [4]  6:21 9:21
   24:8 29:5
**virtually** [1]  6:18
**vividly** [1]  11:14
**vocational** [1]  30:7
**vs** [4]  1:4 2:13 11:3 14:23

### -W-

**W** [2]  1:9 2:6
**wanting** [1]  31:6
**warranted** [1]  9:9
**ways** [1]  28:1
**weapon** [2]  10:1,1
**week** [1]  12:3
**weekend** [1]  11:10
**weeks** [1]  26:10
**weigh** [1]  12:1
**well-travelled** [1]  8:1
**West** [4]  1:12,15,18,21
**Whereas** [1]  27:13
**whole** [2]  9:7 26:15
**wiser** [1]  31:23
**wish** [1]  25:20

**wishes** [1]  10:13
**within** [2]  17:25 31:2
**without** [1]  2:18
**Wong** [2]  1:17 21:4
**words** [1]  5:22
**worst** [1]  6:6
**wrong** [8]  7:3,12,13,19
   8:7,8 25:25 26:1
**wrongs** [1]  25:6

### -Y-

**year** [5]  11:6 19:14 20:18
   21:11 31:14
**years** [37]  10:21,25 11:1
   13:11,20,23 14:9 17:11
   18:1,2,16,16 19:4 21:19
   21:20 22:8,12,17,20 23:5
   23:25,25 24:1,19 25:25
   28:5,5,6,8,11 29:8,9,20
   29:23,25 30:5 31:12
**young** [3]  12:24 15:2
   17:23